**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
GARY LABARBERA, et al.,

                    Plaintiffs,

         - against -

ABBEY TOOL & INDUSTRIAL
SUPPLY CO.,

                    Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 07-3114 (NGG) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Gary LaBarbera and other trustees (collectively, the "Trustees") of the Local 282 Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds (the "Funds") commenced this action on July 26, 2007 against defendant Abbey Tool & Industrial Supply Co. ("Abbey") seeking to compel the defendant to provide a surety bond to guarantee contributions to the Funds. Docket Entry ("DE") 1 (Complaint). Three months later, before Abbey had answered the Complaint, the Trustees reported that Abbey had submitted a cash deposit in lieu of a surety bond and that the parties had reached an agreement on the merits of the case. Minute Entry dated December 4, 2007. The Trustees requested leave to move for attorneys' fees – an issue not resolved by the parties' agreement – and the Honorable Nicholas G. Garaufis, United States District Judge, granted the request. *Id*. The Trustees submitted a motion for attorneys' fees on February 11, 2008, filing proof of service on the defendant the same day. DE 8, 9. Abbey never responded and Judge Garaufis referred the matter to me for a report and recommendation. DE 10. Having considered the Trustees' submission, I now make my report and, for the reasons set forth below, respectfully recommend that the court award the Trustees a total of $3,585.39 in reasonable attorneys' fees and other litigation costs.

I.      Background

The Funds are multi-employer trusts established for the benefit of employees in the building material contractors industry through an Agreement and Declaration of Trust (the "Trust Agreement") entered into by Local Union No. 282 of the International Brotherhood of Teamsters (the "Union") and various industry employers.  Complaint ¶ 4; DE 8-4 (Declaration of [plaintiffs' counsel] Amie Ravitz Hogan ("Hogan") In Support Of Plaintiffs' Application For A Judgment By Default For Attorneys' Fees And Costs) ("Hogan Aff.") Ex. A (copy of Trust Agreement).  The Trust Agreement requires Abbey to contribute to the Funds according to rates and schedules set forth in the collective bargaining agreement to which Abbey is a party.  *Id*. Art. IX § 1(b)-(c).  Abbey entered into such an agreement with the Union, effective July 1, 2002 through June 30, 2005 (the "CBA"), and extended it pursuant to a Memorandum of Agreement through June 30, 2008.  Complaint ¶¶ 9-10; Hogan Aff. Ex. B (copies of the CBA and the renewal agreement).  The CBA requires Abbey to "provide a Surety Bond to guarantee payment of contributions to [the Funds] and dues to the Union as provided for in this Agreement."  CBA § 16(a).  The number of employees at a company determines the amount of the surety bond required.  *Id*.  Alternatively, the employer may deposit the same amount of cash in an escrow account, or provide a personal guarantee.  CBA § 16(a)(1)-(2).  Based on this provision, Abbey is required to submit to the plaintiffs a surety bond, cash deposit, or personal guarantee in the amount of $10,000.  Complaint ¶ 14; Hogan Aff. ¶¶ 6-7.  Failure to submit such assurance constitutes a violation of the CBA.  Complaint ¶ 17.

The plaintiffs filed the instant action on July 26, 2007, alleging that Abbey failed to post the required surety bond, and thereby violated the CBA.  Complaint ¶ 19.  The plaintiffs served

the Complaint on Abbey on July 26, 2007. Abbey never responded. After the time to answer had lapsed, the Trustees later reported that the parties had reached a settlement on the merits, but remained in dispute about attorneys' fees. Hogan Aff. ¶¶ 9-17; Minute Entry dated December 4, 2007. With permission from Judge Garaufis, on February 11, 2008, the Trustees filed the instant motion seeking reasonable attorneys' fees pursuant to section 1132(g)(1) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). Specifically, the Trustees request a total monetary award of $4,733.39, comprised of $3,948.00 in attorneys' fees and $785.39 in other litigation costs. Hogan Aff. ¶¶ 18, 21, 22. Abbey again did not respond, and Judge Garaufis then referred the matter to me for a report and recommendation. DE 10.

## II. Discussion

### A. Attorneys' Fees Under ERISA

ERISA is a comprehensive legislative scheme that governs the administration of employee benefit funds in the interest of protecting employees. *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citing *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)). It does not require employers to provide any particular benefits; rather, once an employer elects to provide benefits, ERISA regulates the terms of administration. *Id*. Employers obligated to make contributions within the meaning of the statute must do so in accordance with the relevant multi-employer plan or collective bargaining agreement. *See* 29 U.S.C. § 1145; *Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)). The statute's overarching purpose – to protect fund beneficiaries'

3

rights – is equitable, and the court therefore enjoys considerable discretion to fashion appropriate relief where a plaintiff successfully proves a violation. *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984); *see* 29 U.S.C. § 1001 (congressional findings that, among other things, safeguards must be provided with respect to establishment, operation, and administration of employee benefit plans to protect the interests of employees and their beneficiaries).

To encourage the policy goal of protecting beneficiaries, the statute specifically provides that in an action brought "by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Id*. § 1132(g)(1). This provision applies to all ERISA actions, with the exception of enforcement actions for unpaid contributions brought under Section 1145. In those cases, the statute mandates an award of attorneys' fees if the benefit plan receives a judgment in its favor. In all other ERISA actions, the court has discretion to award attorneys' fees, regardless of which party prevails. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1075 (2d Cir. 1995) ("Section 502(g)(1) contains no requirement that the party awarded attorneys' fees be the prevailing party."); *see also LaBarbera v. Clestra Hausterman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004) (the court has discretion under Section 1132(g)(1) to award attorneys' fees specifically in the context of an action to compel the defendant to provide a surety bond). Because this case falls in the latter category, I first consider whether the court should exercise its discretion to award the Trustees their attorneys' fees.

B.  The Trustees Are Entitled To An Award Of Reasonable Attorneys' Fees

At the outset, I note that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir.

4

1987). In deciding whether to make a discretionary award of attorneys' fees, courts in this circuit consider five factors, known as the *Chambless* test:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Id*. at 871. The court may analyze all five *Chambless* factors together, allowing one factor to influence the others; no one factor is dispositive. *See Paese v. Hartford Life and Accident Insurance Co.*, 449 F.3d 435, 451 (2d Cir. 2006); *Chapman v. Choicecare Long Island Long Term Disability Income Plan*, Slip Copy, 2005 WL 3556194, at *2 (2d Cir. Dec. 29, 2005).

For the reasons set forth below, I conclude that the five *Chambless* factors favor resolving in the Trustees' favor the threshold issue of whether any award of fees is appropriate. Briefly stated, I conclude that one of the factors is neutral and that the remaining four weigh only slightly in the Trustees' favor. I have sought to consider each factor from Abbey's perspective, but its failure to make any submission plainly makes such a task more difficult.

    1.    <u>Culpability Or Bad Faith</u>

The first factor requires me to consider "the degree of [Abbey]'s culpability or bad faith[.]" *Chambless*, 815 F.2d at 871. Culpability and bad faith are distinct concepts measured by different standards, and a party may be culpable without having acted in bad faith. Specifically, bad faith generally requires a knowledgeable and deliberate false statement; whereas a defendant may be considered culpable based on a finding that it "'violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate.'" *Critelli v. Fidelity National Title Ins. Co. of New York*, 554 F. Supp. 2d 360, 367 (E.D.N.Y. Mar. 24, 2008)

5

(quoting *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000)). While either conclusion would weigh in favor of awarding attorneys' fees, *Paese*, 449 F.3d at 450-51, a finding of bad faith generally carries more weight than the other factors in determining whether to award attorneys' fees in an ERISA action. *Critelli*, 554 F. Supp. 2d at 364. That said, even a finding of bad faith is not dispositive of the threshold question of whether any award of fees is warranted. *Chapman*, 2005 WL 3556194, at *2 (citing *Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund*, 902 F.2d 185, 189 (2d Cir. 1990)).

The Trustees argue that Abbey acted in bad faith when it failed "to enter into settlement discussions, offer defenses or post the bond." DE 8-7 (Plaintiffs' Memorandum Of Law In Support Of Their Application For Default Judgment For Attorneys' Fees and Costs) ("Memo.") at 3. The Trustees further argue that Abbey's "egregious failure to mitigate the costs of this litigation for both sides[]" further demonstrates its bad faith. *Id*. I disagree: a party that declines to participate in the litigation process is subject to a default judgment, but its inaction by itself does not necessarily demonstrate bad faith, and the Trustees cite no authority to the contrary.

Although I am not persuaded that Abbey acted in bad faith, the record suffices to establish Abbey's culpability. Culpability "is commonly understood to mean conduct that is 'blameable, censurable; ... at fault; involving the breach of a legal duty or the commission of a fault ...'" *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256-57 (3d Cir. 1994) (quoting Black's Law Dictionary (6th ed. 1990)). Before they sued Abbey, the Trustees tried to secure the surety bond at issue in this dispute. Complaint ¶ 15. Abbey did not comply then, or even after the Complaint was filed; instead, it posted a cash deposit just before the Trustees were to file a motion for default judgment. Hogan Aff. ¶¶ 11-13. Abbey's eventual

but belated satisfaction of the Trustees' demand for a surety bond (or its equivalent) demonstrates that it is at fault for the breach of a legal duty. Although an actual determination of liability would weigh more heavily in favor of awarding attorneys' fees, Abbey's culpability in letting the matter proceed as far as it did weighs slightly in the Trustees' favor.

    2.    <u>Ability Of The Defendant To Satisfy An Award Of Attorneys' Fees</u>

The second *Chambless* takes into account Abbey's "ability ... to satisfy an award of attorney's fees[.]" 815 F.2d at 871. The Trustees take the position that the record is silent on this score, and that the court should treat this factor as neutral. Memo. at 3 (citing *Meyer v. Ins. Co. of America,* 1998 WL 709854 (S.D.N.Y. Oct. 9, 1998)); *see also Sikorski v. Sikorski*, 930 F. Supp. 804, 813 (E.D.N.Y. 1996) (declining to award fees when four factors weighed against the movant and there was "no indication that [the plaintiff] is able to satisfy an award of attorney's fees[.]"). I agree.

    3.    <u>Deterrence Of Other Persons Acting Similarly Under Like Circumstances</u>

The third *Chambless* factor addresses the likelihood that awarding fees in the instant action would have a deterrent effect on other persons in similar circumstances. 815 F.2d at 871; *see Critelli,* 554 F. Supp. 2d at 368. The statute is "carefully phrased" in order to "deter crooked claimants while insulating anyone who asserts a colorable claim[.]" *Seitzman v. Sun Life Assurance Co. of Canada,* Inc., 311 F.3d 477, 485 (2d Cir. 2002). Generally, the court should interpret this factor consistent with the overarching goal of ERISA – vindicating the rights of beneficiaries. I find that this factor weighs in the Trustees' favor; awarding fees in the instant action would deter other employers from delaying or refusing to maintain the required surety bond. Conversely, declining to award fees in these circumstances would make such resistance

and delay essentially cost-free for recalcitrant employers. The Trustees argue that this factor weighs in their favor for that reason. Memo. at 3. Although such analysis only goes so far – and in particular does not relieve the Trustees of their obligation to seek only such fees as are reasonable under all the circumstances – I tend to agree that under the circumstances of this case the third factor weighs in favor of a fee award.[1]

        4.        Relative Merits Of The Parties' Positions

The fourth *Chambless* factor, which takes into account "the relative merits of the parties' positions," 815 F.2d at 871, has some overlap with the first factor's consideration of bad faith and culpability. *See Seitzman*, 311 F.3d at 482. Under the circumstances here, the overlap is virtually complete: the record contains no information about the merits of any position that caused Abbey first to resist providing a surety bond when asked, and later to provide a cash equivalent on the eve of default proceedings; it reveals only that Abbey acted in that manner. For the same reason that I conclude that Abbey is "culpable" for purposes of the first factor, I also conclude that the Trustees' position had more merit than Abbey's. As a result, this factor also weighs slightly in favor of the Trustees, but in a way that tips the scales no farther in the Trustees' direction than did my similar conclusion as to the first factor.

        5.        Common Benefit On Group Of Pension Plan Participants

The fifth and final *Chambless* factor takes into account "whether the action conferred a common benefit on a group of pension plan participants[.]" 815 F.2d at 871. A surety bond

---

[1] This is not a case in which the request for fees is so excessive as to deter persons from entering the relevant business altogether. Such a request would weigh against the award of fees. *See LaBarbara v. J.E.T. Resources, Inc.*, 296 F. Supp. 2d 346, 351 (E.D.N.Y. 2005) (application for $100,000 in attorneys' fees, in an action to compel defendant to maintain a $10,000 surety bond, was so excessive as to cause employers to avoid entering the business in the first place).

ensures the collection of contributions to the Funds by employers. Memo. at 4-5; Complaint ¶ 12. Securing such a protection benefits all participants in the Funds by guarding against the risk that an employer will fail to pay required contributions, and the Trustees' pursuit of litigation against those who fail to comply with the surety bond provision confers a similar actuarial benefit on participants. The benefit seems minor – certainly as compared, for example, to the benefit conferred by seeking the recovery of delinquent contributions, as opposed to the bond that ensures they will be paid – but it is nonetheless a benefit that weighs slightly in the Trustees' favor.

     6.  Conclusion As To The *Chambless* Factors

Four of the five factors favor an award of attorneys' fees, and none weighs against such an award. Although none of the five factors weighs heavily in the balance, an award of fees will tend to advance ERISA's remedial goal of protecting the rights of the Funds' beneficiaries. I therefore respectfully recommend that the court grant the plaintiffs' motion for an award of reasonable attorneys' fees.

  C.  The Amount Of Attorneys' Fees To Be Awarded

The Trustees seek reimbursement of $3,948.00 in attorneys' fees for 14.10 hours of work by a single attorney at the hourly rate of $280.00. As explained below, I conclude that the number of hours is reasonable but that the hourly rate should be reduced to $200, and that the court should therefore award fees in the amount of $2,820.00.

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enterprises, Inc.*, 325 F.

Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004));

*Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). The lodestar method, however, does not simply rely on any mechanical invocation of an attorney's claimed hours and rates. Rather, a court considering a fee application must determine "what a reasonable, paying client would be willing to pay" in light of all the relevant circumstances of the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).[2] District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). I therefore examine the reasonableness of both the proposed hourly rate and the number of hours for which the Trustees seek reimbursement. As explained below, I conclude that the court should reduce the rate, but not the hours, when calculating its award of attorneys' fees in this case.

1. Hourly Rates

The plaintiffs ask for an award of fees based on the hourly rate of $280 for a law firm associate who has been practicing since 2000. *See* Hogan Aff. ¶ 19. I conclude that under the circumstances of this case, the rate is unreasonably high. As the court in *Arbor Hill* made clear – admittedly in the context of applying a different fee-shifting statute – the ultimate task in considering a reasonable hourly rate is to determine, under all of the circumstances, "the rate a

---

[2] In using the "lodestar" terminology, I recognize that its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Id*. at 190. I use the term here only for ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*. *See id.* at 190 n.4.

10

paying client would be willing to pay." 493 F.3d at 117. I am persuaded that a paying client would be unwilling to pay an hourly rate of $280 for the services that the Trustees' counsel has rendered here. Of particular relevance to that determination is that plaintiffs in several of the many similar ERISA cases decided recently in this district have not even requested such high rates of reimbursement for a law firm partner, but have instead asked for no more than $210 per hour. *See*, *e.g.*, *Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund and 401(k) Savings Plan, et al. v. Dan Yant, Inc., et al.*, 2007 WL 3036759, at *9 (E.D.N.Y. Oct. 16, 2007) (adopting recommendation in ERISA contributions case to accept as reasonable law firm partner's proposed hourly rate of $210); *Finkel v. Stan Electric, Co.*, docket no. 06-CV-1315 (NG) (JO), Report and Recommendation at 12 (E.D.N.Y. Aug. 31, 2007) (recommendation in ERISA contributions case – later adopted by district court – to accept as reasonable hourly rate of $200 proposed by attorney admitted to practice in 1999). Although law firm partners performing other kinds of work can and do command higher hourly rates, I see no reason why a paying client would agree to pay an hourly rate of $280 or more for an associate, even a senior associate, to perform the kind of work at issue here, particularly where other more experienced specialists in the same kind of work who regularly practice in this district charge significantly less.

I recognize that the Trustees have previously succeeded in requesting, under similar circumstances, an hourly rate of $250 for the same attorney who represents them in this case. *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, 2006 WL 3628024, at *8 (E.D.N.Y. Dec. 11, 2006). In the latter case, however, the defendant did not challenge that rate as unreasonable, but objected only to the still higher hourly rates that the associate charged for work performed after

the end of 2003. As a result, the court had no occasion to consider either the principles later articulated in *Arbor Hill*, or the fact that another judge in this district had previously found that an hourly rate of no more than $150 was appropriate for the same attorney in similar circumstances. *See LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 353 (E.D.N.Y. 2005). Thus, as far as I am aware, no court has yet had occasion to consider whether the hourly rate proposed here for the Trustees' attorney would meet the "paying client" test rather than simply fall within the range previously approved in some (but not all) similar cases. I intend no disrespect for the Trustees' counsel – nor indeed any disagreement with the decisions cited above – in concluding that in light of *Arbor Hill* and the circumstances of this case, past practice is no longer a sufficient basis for requiring a defendant to subsidize the plaintiffs' choice of counsel who charges more than other similarly situated attorneys in this district who perform similar work in the same field of practice.

The plaintiffs have done nothing to explain why an associate performing the kind of work at issue here could command such fees from a paying client. Senior associates with comparable experience are typically compensated at hourly rates ranging from $200 to $250, *see King*, 2006 WL 3335115, at *7 (collecting cases in this district), and I am aware of no circumstances suggesting that a paying client would balk at such rates. I therefore recommend reducing Hogan's fee for tasks billed at $280 per hour to an hourly rate of $200. I choose a figure at the lower range because of the simplicity of the matter at hand. This case was instituted to compel Abbey to post the required surety bond; for an attorney practicing in this area of law since 2000, at a firm that regularly handles such cases, such an action should present no unusual or complicated issues of fact or law. *See* Hogan Aff. ¶ 19.

12

2. Hours Expended

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. Jul. 22, 2005). Having reviewed the plaintiffs' submissions in this regard I am satisfied that they sufficiently document the number of hours their attorney billed. *See* Hogan Aff. Ex. C. Further, I conclude that the amount of hours spent is justified. The Trustees' counsel spent approximately nine hours initiating the lawsuit, exchanging communications with the client and defendant, and appearing in court. *Id*. at 1-3. She spent the remaining five hours preparing the current motion, an amount reasonable for an eighteen page memorandum of law including one affidavit and four additional exhibits. Hogan Aff. Ex. C at 3. I therefore conclude that the 14.10 hours of attorney work for which the Trustees seek reimbursement is reasonable.

D. Other Litigation Costs

The plaintiffs seek reimbursement of a total of $785.39 in other litigation costs. Of that amount, $384.00 is attributable to service fees invoiced by Target Research LLC; $31.39 is attributable to overnight mail fees; and $350.00 is attributable to the filing fee paid to the court. I conclude that the Trustees adequately describe and document all three, and each should therefore be awarded. *See* Hogan Aff. Ex. E (service invoice); *id*. Ex. C (mail fees and filing fee); *see also* DE 1 (filing fee). However, the plaintiffs should not be compensated for the requested

"statutory fee" of $20.00. Hogan Aff. ¶ 21. The Trustees have neither provided any explanation for the charge nor a receipt or other proof to substantiate that they incurred it. In sum, I recommend an award of litigation costs in the amount of $765.39.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the plaintiffs $2,820.00 in reasonable attorneys' fees and $765.39 in other costs, for a total award of $3,585.39.

IV.     Objections

I direct the plaintiffs to serve a copy of this Report and Recommendation on defendant Abbey Tool & Industrial Supply Co. by certified mail no later than August 15, 2008, and to file proof of service with the court no later than August 18, 2008. Any objections to this Report and Recommendation must be filed with the Clerk no later than August 29, 2008. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); *See* Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d. Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated:  Brooklyn, New York
             August 11, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge